FILED
2020 Apr-13 AM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| RICHARD BLANKENSHIP, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 6:18-cv-01827-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Richard Blankenship appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1). Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

## **I.     FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Plaintiff was fifty-nine years old at the time of his disability onset and sixty-one at the time of the unfavorable decision issued by the Administrative Law Judge

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 7).

("ALJ"). (R. 26, 28, 176). Plaintiff speaks English and has a high school education. (R. 26). Plaintiff worked in the coal mining industry for thirty-seven years as a miner, mining supervisor, and repair welder. (*See* R. 66). Plaintiff filed the instant application on April 4, 2016, alleging a disability onset of June 30, 2016, due to diabetes, deformed feet, bunions, high blood pressure, depression, and anxiety. (R. 176, 201). Plaintiff subsequently amended his disability onset date to April 4, 2016. (R. 15, 36, 196). Plaintiff testified he could no longer work, primarily due to pain in this legs and feet caused by neuropathy and bunions. (R. 58-59).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,*

440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since his application date. (R. 18). At step two, the ALJ found

440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since his application date. (R. 18). At step two, the ALJ found

Plaintiff suffered from the following severe impairments: (1) obesity; (2) uncontrolled diabetes mellitus; (3) diabetic peripheral neuropathy; (4) bunions; and (5) obstructive sleep apnea. (*Id.*).[2]

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 21). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following restrictions: (1) using bilateral foot controls occasionally; (2) walking "short distances of up to 100 yards per instance on flat, hard surfaces"; (3) climbing ramps and stairs occasionally, but never climbing ladders, or scaffolds; (4) balancing occasionally; (5) stooping frequently; (6) crouching, kneeling, and crawling occasionally; and (5) avoiding any exposure to unprotected heights. (R. 22).

At step four, the ALJ determined Plaintiff could not perform his past relevant work but could perform other widely available jobs, including agricultural produce packer, hand packager, and laundry laborer. (R. 26-27). Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 27-28). The Appeals Council

---

[2] The ALJ also determined other impairments noted by Plaintiff—hypertension, chronic spinal pain, hypercholesterolemia, chronic kidney disease, ischemic cardiomyopathy, carotid artery bruit, myalgias, right tympanoplasty, nonalcoholic fatty liver disease, bilateral non-obstructing nephrolithiasis, depression, and anxiety—were not severe. (R. 19).

denied Plaintiff's request for review. (R. 1). Plaintiff timely filed the instant appeal. (*See id.*; Doc. 1).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

On appeal, Plaintiff contends the ALJ erred by: (1) ignoring evidence supporting a more limited RFC, thus misapplying legal standards and running afoul of the substantial evidence standard; (2) failing to give proper weight to the opinions of Plaintiff's treating physician, Steve Johnson, M.D., while providing great weight to the opinion of Christopher Baalmann, M.D., a one-time consulting physician; and (3) improperly evaluating Plaintiff's credibility under the Eleventh Circuit's pain standard. (Doc. 12 at 11). Plaintiff's arguments are addressed in turn.

A.  **ALJ's Review of the Medical Evidence**

First, Plaintiff contends the ALJ "cherry-picked" portions of the medical record indicating he was not disabled. (Doc. 12 at 13-14). At the outset, it bears repeating that Plaintiff: (1) alleged disability primarily on the basis of leg and foot pain; and (2) had utilized Dr. Johnson as his primary physician since 2011. (R. 43-44, 655). Dr. Johnson provided a sworn statement and functional capacity assessment on December 21, 2017. (R. 655-691). Dr. Johnson testified he had been Plaintiff's primary physician since 2011 and had seen him approximately fifty times, treating Plaintiff's diabetes, neuropathy, obstructive sleep apnea, and chronic spine pain. (R. 679-84).[3] Dr. Johnson testified Plaintiff's "biggest issue is chronic spine pain," noting his decades of coalmining had led to "a lot of degenerative disease in his spine," which led to "back pain everyday restricting" his activities and abilities. (R. 680). During the ALJ hearing, Plaintiff's counsel explained Dr. Johnson's diagnosis of degenerative disc disease ("DDD") was based on Plaintiff's history and age. (R. 41).

The ALJ correctly noted Plaintiff's testimony that his primary problem was leg and foot pain due to bunions and neuropathy. (R. 23; *see* R. 48-60). The ALJ also correctly noted that, while Dr. Johnson has treated Plaintiff since 2011, his

---

[3] While Dr. Johnson has treated Plaintiff since 2011, he did not use an electronic database until 2017. (*See* Doc. 12 at 7, n.3). Accordingly, the treatment notes Dr. Johnson created prior to 2017 were hand-written and difficult to decipher. (*See id.*; R. 386-403, 410-15, 527-59. *But see* 560-91).

medical record was devoid of spinal imaging or a diagnosis of spinal impairment. (R. 23). Indeed, Plaintiff's new patient information form from his first visit with Dr. Johnson noted he was already proscribed Lortab and complained of joint and muscle pain but specifically denied back pain. (R. 23; *see* R. 531). Likewise, Plaintiff's disability report claimed he could not work due to diabetes, deformed feet, bunions, high blood pressure, depression, and anxiety; absent from the report were any allegations of limitations due to back pain. (R. 201). Many of Dr. Johnson's treatment notes refer to Plaintiff's spine pain, despite the lack of objective evidence or Plaintiff's specific complaints to support spinal ailments. (R. 566, 580, 587, 590). Similarly, the ALJ noted Dr. Johnson reported Plaintiff had osteoarthritis of the knee, despite the lack of evidence of this ailment. (R. 23; *see* R. 580). From these records, the ALJ concluded Plaintiff did not suffer from disabling spine pain and that there was no objective evidence to support the conclusion that Plaintiff had any knee impairment. (R. 23).

Regarding Plaintiff's foot and leg pain, the ALJ cited to each of Dr. Johnson's 2017 treatment records which addressed these conditions, as well as some earlier treatment records. (R. 23-24). Specifically, the ALJ cited Dr. Johnson's treatment notes from: (1) a December 31, 2015 visit reflecting Plaintiff's chronic pain was "controlled" and he was doing "pretty good" on daily Norco 10, which "ke[pt] him active" (R. 388-89); (2) a February 24, 2016 visit reflecting

8

Plaintiff enjoyed working with the Cordova football team (R. 386); (3) an April 25, 2016 visit during which Plaintiff reported working with the Cordova football team and getting six to eight hours of "good quality" sleep each night and noting that Plaintiff "seem[ed] well," (R. 550); (4) a November 10, 2016 visit during which Plaintiff reported being active and involved with the Cordova football team (R. 558); (5) a January 12, 2017 visit reflecting Plaintiff's daily medication for chronic pain but noting Plaintiff's normal musculoskeletal and neurologic exams (R. 560-62); (6) a March 9, 2017 visit noting Plaintiff's marginal pain control, daily function, and quality of life due to chronic spine pain (R. 566); (7) a May 1, 2017 visit noting Plaintiff's daily activity was "very restricted" due to chronic pain (R. 569); (8) a June 14, 2017 visit during which Dr. Johnson noted Plaintiff was "very restricted" due to severe, marginally-controlled pain and opined he could never work again, but also noting Plaintiff tried to stay active, enjoyed watching the Cordova football team practice, and performed limited tasks around the house (R. 580); (9) a July 14, 2017 visit noting Plaintiff's pain control was "adequate," he had "good" daily function, and he performed most daily activities independently (R. 584); (10) an August 29, 2017 visit noting Plaintiff's pain was controlled and his daily function was "okay" (R. 587); and (11) an October 31, 2017 visit reflecting Plaintiff had "good" pain control and "good" daily function and performed daily activities—including driving—independently (R. 590-91). (R. 23-

9

24). On this record, the ALJ concluded Plaintiff did not have disabling foot or leg pain. (R. 24).

The ALJ next reviewed Dr. Johnson's records addressing treatment of Plaintiff's diabetes, sleep apnea, and bunions. (R. 24-25). The ALJ accurately recounted records from 2016 and 2017 showing Plaintiff's diabetes was poorly controlled due to Plaintiff's noncompliance; the ALJ concluded the record did not support the conclusion that Plaintiff's diabetes was disabling. (R. 24). Likewise, the ALJ noted the record did not reveal Plaintiff suffered from significant fatigue or shortness of breath and thus, that his sleep apnea was not disabling. (R. 24). Finally, the ALJ noted Dr. Johnson did not diagnose Plaintiff with bunions. (R. 25).

The ALJ also recounted the results of Plaintiff's Consultative Examination ("CE"), during which Plaintiff reported difficulty lifting more than fifty pounds and walking more than a block. (R. 421-26). Dr. Baalmann's June 4, 2016 physical examination revealed Plaintiff: (1) had minimal difficulty getting up from a chair and getting onto an examination table; (2) could not walk on his heels or toes; (3) walked with some difficulty but with a normal gate and without an assistive device; (4) had a negative straight leg test; (5) could squat to the floor and recover, perform tandem heel walking, and bend over to touch his toes; (6) had full grip strength, full motor strength in all extremities, and no evidence of muscular

atrophy; and (7) had normal fine and gross manipulation skills, reflexes, range of motion, and joints. (*Id.*). Although Dr. Baalmann noted Plaintiff had bunions on both great toe metatarsophalangeal joints, he found Plaintiff had intact sensation in both feet. (*Id.*). Similarly, Plaintiff reported bilateral thigh pain, but Dr. Baalmann found he had normal strength and range of motion in his hips and knees. (*Id.*). Dr. Baalmann also found no evidence of diabetic neuropathy and no obvious fatigue. (*Id.*). Ultimately, the ALJ's RFC was consistent with the limitations described in Dr. Baalmann's CE. (R. 25).

Plaintiff contends the ALJ's recitation of the record constitutes cherry-picking. (Doc. 12 at 13). However, Plaintiff does not point to medical records the ALJ did not cite. Instead, Plaintiff points to different portions of the records the ALJ did cite, noting portions of Dr. Johnson's treatment notes from five visits in 2017: January 12, March 9, May 1, June 14, and August 29. (Doc. 12 at 7-8, 17-18). Specifically, Plaintiff notes treatment records from these visits include references to Plaintiff's chronic and/or poorly controlled pain, limited functioning, and daily regimen of narcotic pain medication. (*Id.*). However, the ALJ discussed each of these treatment notes, including the portions of the notes that reported more severe pain and attendant limitations. (R. 23-24). Indeed, the ALJ's decision cites to each appointment Plaintiff had with Dr. Johnson in 2017 during which his pain was discussed. Accordingly, to the extent Plaintiff contends the ALJ ignored

11

portions of the record which did not wholly support his conclusion that Plaintiff was not disabled, this contention lacks merit. Moreover, the question here is not whether the ALJ could have reached a different conclusion regarding Plaintiff's disability; the relevant inquiry is whether the conclusion is supported by substantial evidence. *See Dyer*, 395 F.3d at 1212. Here, substantial evidence—largely in the form of Dr. Johnson's treatment records—supports the ALJ's conclusions.

## 2. Weight Afforded to Opinion Evidence

Plaintiff contends the ALJ erred in his assessment of the opinions of both: (1) Dr. Johnson, his long-time treating physician; and (2) Dr. Baalmann, the one-time consultative examiner. (Doc. 12 at 15-20). Specifically, the ALJ assigned "some weight" to Dr. Johnson's opinions, while assigning "appreciable weight" to Dr. Baalmann's opinion. (R. 25). Absent a showing of good cause to the contrary, the opinion of a claimant's treating physician is entitled to substantial or considerable weight. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is

required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743-GMB, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016). While opinions from one-time examiners are not entitled to any particular deference, they can— when consistent with the medical record—be used to discount inconsistent opinions from treating physicians. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833-34 (11th Cir. 2006).

Here, Dr. Johnson completed a functional capacity assessment on December 21, 2017, in conjunction with his sworn statement. (R. 655-57; *see* R. 658-91).[4] Therein, Dr. Johnson stated he had treated Plaintiff on more than fifty occasions and opined Plaintiff could: (1) sit for one hour continuously; (2) stand and/or walk for an hour or less continuously; (3) sit for a total of an hour or less in an eight-hour work day; (4) stand and/or walk for an hour during an eight-hour work day;

---

[4] The first diagnosis on Dr. Johnson's functional capacity assessment is "chronic lower back pain—DDD." (R. 655).

13

and (5) lay down for six hours out of an eight-hour work day. (R. 655-56). Dr. Johnson further opined Plaintiff could frequently lift up to five pounds, occasionally lift up to ten pounds, and never lift more than ten pounds. (R. 656). Dr. Johnson also opined Plaintiff would miss between sixty and one hundred days of work each year due to his medical conditions. (R. 657).

Treatment notes from May and June 2017 also include what could fairly be considered as Dr. Johnson's opinions regarding Plaintiff's abilities. The May 1, 2017 treatment note remarked:

> He has chronic pain [and] is very restricted in his day-to-day activities. He has pain on the scale of 5-7 every day and also has spikes every day of 7-9. He takes Norco 10 q.i.d. every day. He is able to walk and drive. He does very limited light activity around the home. He has to recline for an hour or more before lunch and after. He sleeps poorly because of pain. He does not follow a diet. He is unable to exercise. I do not think that he takes his diabetic medicines. He does not check his blood sugars. . . . His feet are cold, tingle, burn at night. . . . Based on pharmacy refill records he does not take his insulin as prescribed. Based on his weight over the past year or so he does not follow a hypo caloric diet. He has significant fatigue and dyspnea on exertion with chest fullness but no symptoms that he calls chest pain. Sleeps on 2 pillows. Often gets up at night a bit short of breath but it is relieved quickly.

(R. 569). Dr. Johnson also opined Plaintiff had a marginal quality of life and was "[d]isabled from any meaningful employment." (*Id.*).

In his treatment note from June 14, 2017, Dr. Johnson noted Plaintiff was: (1) "plagued by severe pain daily" for which he took narcotic pain medication; and (2) unable to sleep more than three or four hours each night due to pain. (R. 580).

14

Dr. Johnson opined: "Pain is largely degenerative disk disease of the back, osteoarthritis of the knee, and diabetic peripheral neuropathy. Pain is marginally controlled. His daily function is severely restricted. He certainly can never work again." (*Id.*).

> The ALJ afforded Dr. Johnson's opinions "some weight," explaining:
>
> they are not consistent with his longitudinal records, which indicate substantially fewer office visits than the 50 he estimated, and his diagnoses of degenerative disc disease and osteoarthritis of the knee are not supported by any objective evidence. Dr. Johnson's opinions are not consistent with his own records, and are not consistent with the examination of Dr. Baalmann. He also stated that the claimant's treatment regimen changed around the time of the amended alleged onset date of disability, but this is not apparent in his records.

(R. 25-26).[5] The ALJ was correct that Dr. Johnson's opinions regarding Plaintiff's limitations are largely founded on ailments—particularly DDD, but also osteoarthritis—of which there is no objective evidence. Moreover, the ALJ correctly noted Dr. Johnson's treatment notes do not show consistent debilitating pain. While Plaintiff reported extreme, poorly controlled pain during three visits in March, May, and June 2017, treatment notes from July, August, and October 2017 reflect Plaintiff had: (1) pain which was controlled; (2) "good" or "okay" daily function; and (3) the ability to perform daily activities independently (R. 584, 587,

---

[5] Insofar as the ALJ concluded Dr. Johnson overestimated the number of times he saw Plaintiff, the medical records indicate Plaintiff had approximately thirty-two office visits with Dr. Johnson—substantially less than the fifty Dr. Johnson reported. (R. 386-404, 410-15, 527-91).

15

590).[6] Accordingly, the ALJ's conclusion that Dr. Johnson's opinions were contradicted by his own treatment records is supported by substantial evidence. This provided good cause to afford Dr. Johnson's opinion less than full weight.

Regarding Dr. Baalmann's opinion, his one-time physical exam led him to conclude Plaintiff had no significant limitations in his ability to stand, sit, walk, bend, stoop, reach, handle, lift, or carry. (R. 425). The ALJ afforded Dr. Baalmann's opinion "appreciable weight," describing it as internally consistent. (R. 25). Plaintiff contends the ALJ erred by affording more weight to Dr. Baalmann's opinion than Dr. Johnson's. (Doc. 12 at 19-20). However, the ALJ adequately explained his decision to afford less weight to Dr. Johnson. Moreover, there is no inherent error in accepting the opinion of a one-time examiner over the opinion of a treating physician, so long as the decision is supported by substantial evidence. *See Fries*, 196 F. App'x at 833-34; *Jones v. Bowen*, 810 F.2d 1001, 1005-06 (11th Cir. 1986) (ALJ did not err in discounting treating physician's opinion that was contradicted by consultative examiner's opinion).

### 3. **Plaintiff's Credibility and the Pain Standard**

Finally, Plaintiff contends the ALJ erred in rejecting his testimony regarding his pain and the resulting limitations. The Eleventh Circuit has established a three-part pain standard to assess a claimant's subjective pain testimony:

---

[6] Likewise, several of Dr. Johnson's treatment notes from visits prior to March 2016 reveal Plaintiff was active and his pain was controlled with medication. (*See* R. 386, 388-89, 408).

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). An individual's statement as to pain is not conclusive evidence of disability; there must also be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, to support the statement. 42 USC § 423(d)(5)(A). Thus, a claimant's subjective pain testimony supported by medical evidence supports a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony regarding pain. *Wilson*, 284 F.3d at 1225.

The determination of whether a medical condition can reasonably be expected to give rise to pain is a question of fact subject to the substantial evidence standard of review. *See Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). Inconsistencies in the record allow the ALJ to choose between conflicting evidence and make his own credibility assessment. *See Wind v. Barnhart*, 133 F. App'x 684, 691 (11th Cir. 2005).

Plaintiff testified he experiences constant severe pain in his legs and feet due to diabetic neuropathy and bunions. (*See* Doc. 12 at 21). Plaintiff testified his

bunions required him to wear extremely wide shoes and caused excruciating pain anytime he walked more than fifty yards; he stated he spent anywhere from three to eight hours a day with his legs elevated due to pain. (R. 48, 53, 60). Plaintiff also testified he could only sit for thirty minutes before needing to get up to help circulation in his legs and diminish his neuropathic leg pain. (R. 53). The ALJ found Plaintiff's impairments could reasonably be expected to cause some symptoms. (R. 23). However, the ALJ concluded the intensity, persistence, and limiting effects to which Plaintiff testified were not entirely consistent with the medical record. (*Id.*).

In reaching this conclusion, the ALJ relied on the evidence already discussed: Dr. Johnson's treatment record and Dr. Baalmann's CE. (R. 23-26). Again, Dr. Johnson did not diagnose Plaintiff with bunions, and his treatment records do not reveal treatment for the condition. (*See* R. 25). Dr. Baalmann noted the presence of bunions but, after conducting a physical exam, found they did not significantly limit Plaintiff's functional abilities. (R. 425). The objective evidence touching on Plaintiff's other claimed impairments has already been discussed and constitutes substantial evidence on which to less than fully credit Plaintiff's testimony regarding pain. *Miles v. Comm'r*, 652 F. App'x 923, 927 (11th Cir. 2016) (affirming Commissioner's denial of benefits where objective evidence contradicted claimant's allegations of pain); *see Costigan v. Comm'r, Soc. Sec.,*

603 F. App'x 783, 787 (11th Cir. 2015) (ALJ did not err in discrediting claimant's subjective complaints after specifically articulating reasons for rejecting them).[7] For the foregoing reasons, the ALJ properly applied the pain standard.

IV. **CONCLUSION**

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 13th day of April, 2020.

*[signature]*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[7] The record includes black and white copies of photos of Plaintiff's feet. (R. 375-77). Because the images in the black and white copies are not discernable, Plaintiff attached color copies as an exhibit to his principal brief. (Doc. 12-1). These color photos appear to show Plaintiff's feet: (1) immediately following bunion surgery; and (2) after recovery from bunion surgery. (*Id.*). Also included is a color photo of an X-ray of Plaintiff's feet, although it is not clear whether the x-ray was taken before or after surgery. (*Id.*). The Commissioner objects to adding this evidence to the record in this case, contending it would run afoul of principles discussed in *Anglin v. Soc. Sec. Admin.*, 602 F. App'x 483, 485, n.3 (11th Cir. 2015). (Doc. 13 at 5, n.5). The court is not required to resolve this question. It appears Plaintiff underwent surgery for his bunions in 2005, more than a decade before his alleged disability onset date. (*See* Doc. 12 at 5). Plaintiff also returned to work in the mines after his bunion surgery. Accordingly, these photos are not determinative of Plaintiff's disability now, fifteen years later.

19